IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**YEOHYUN D. AHN**
1637 Cricket Court
Munster, IN 46321

        Plaintiff,                Case No.: 25-cv-884

        v.                    **JURY TRIAL DEMANDED**

**BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM**
1860 Van Hise Hall
1220 Linden Drive
Madison, Wisconsin 53706

        Defendant.

---

## COMPLAINT

Plaintiff, Yeohyun D. Ahn, through her attorneys, Hawks Quindel, S.C., by Emma E. Knatterud-Johnson, for her Complaint against Defendant, Board of Regents of the University of Wisconsin System, states and alleges as follows:

### NATURE OF ACTION

1. Plaintiff, Yeohyun D. Ahn, brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 2000e *et seq.*, Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* to correct unlawful employment practices and to provide appropriate relief where she was adversely affected by such practices.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves federal questions under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*

3.      Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 12117(a), 2000e-5(f)(3) because all acts or omissions giving rise to this claim occurred in this District: Madison, Wisconsin.

4.      The Court has personal jurisdiction over Defendant because its principal place of business – that is, its flagship campus and/or headquarters – is located in this District.

5.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on February 7, 2024.

7.      Prior to filing this Complaint, Plaintiff obtained a Determination and Notice of Rights ("Notice") from the EEOC dated August 1, 2025.

8.      This Complaint is filed within ninety (90) days of Plaintiff's receipt of said Notice. A true and correct copy of the Notice is attached hereto as **Exhibit A.**

## PARTIES

9.      Plaintiff, Yeohyun D. Ahn ("Ahn"), is an adult resident of the State of Indiana, residing at 1637 Cricket Court, Munster, Indiana 46321.

10.     At all relevant times, Ahn was an employee of Defendant, as that term is defined in Title VII, 42 U.S.C. § 2000e(f).

11.     At all relevant times, Defendant, Board of Regents of the University of Wisconsin System's ("Defendant" or "UW"), principal office is located at 1860 Van Hise Hall, 1220 Linden Drive, Madison, Wisconsin 53706.

12.     Defendant is a "program or activity" receiving federal financial assistance pursuant to 29 U.S.C. § 794(b)(1)(A), for purposes of the Rehabilitation Act.

## FACTUAL ALLEGATIONS

13.     Ahn is an Asian-American woman. She was born in South Korea and her first language is Korean; English is her second language.

14.     Ahn has long been diagnosed with a cardiovascular disease and continued to receive treatment during her time as an employee for Defendant.

15.     Ahn underwent surgery in 2010 to receive a coronary artery stent; her heart functions at around eighty percent (80%) capacity of the average person. Along with her cardiovascular disease, Ahn has a weakened immune system.

16.     Ahn has taught graphic design at the college and/or university level for over fifteen (15) years at various institutions in South Korea and the United States, including School of the Art Institute of Chicago, Chicago State University, and Valparaiso University.

17.    Ahn began her career as an adjunct faculty member and full-time lecturer. In 2014, Ahn began teaching as a tenure-track Assistant Professor at Valparaiso University.

18.    On or around April 30, 2018, Defendant hired Ahn as a tenure-track Assistant Professor of Graphic Design at its flagship location at the University of Wisconsin-Madison. Ahn's position in the Graphic Design Program ("Program") was within the Art Department ("Department"), School of Education; she was also a faculty affiliate with the Center for East Asian Studies.

19.    On information and belief, from the 1990s until Ahn's hire, Respondent had not had a female and/or Asian tenure-track professor in the Graphic Design Program of the Art Department. Prior to Ahn's hire, all of the former tenured and tenure-track professors in the Graphic Design Program of the Art Department have been White and male; thus, as a consequence, all the previous Graphic Design Program chairs have been White men.

20.    Ahn's initial appointment was for a three (3) year term and was renewable.

21.    At the end of her employment at UW, Ahn held the title of Assistant Professor of Graphic Design and Interaction Design.

22.    During Ahn's employment with UW, the Art Department had three (3) department chairs—all male, and none of them Asian/Asian-American.

23.    As a UW employee, Ahn first reported directly to Dennis Miller, Graphic Design Program Chair.

24.     Then in the Spring of 2022, Ahn reported to Derrick Buisch, Art Department Chair; Professor Miller retired on or about May 21, 2022, and the program chair position was left vacant and remains unfilled.

25.     Buisch ended his time as Department Chair on or about June 30, 2023, and was replaced by Leslie Smith, III on or about July 1, 2023.

26.     In 2018, the then-Art Department Chair, Douglas Rosenberg, stated to Ahn regarding Professor Miller's treatment towards her, "he will start being mean to you soon," and that "if you have any harassment, please let me know."

27.     Also, during Ahn's employment with UW, she was for much of her time, one (1) of only two (2) Graphic Design Professors.

28.     When Ahn was hired in 2018, the other Graphic Design Professor was Henrique Nardi. Nardi was a Visiting Assistant Professor from 2015 to 2018, and full-time Lecturer from 2018 to 2023. Nardi left UW on or about May 21, 2023.

29.     Then in or around August 2022, UW hired Taekyeom Lee, tenure-track Assistant Professor of Graphic Design, a male professor originally from South Korea.

30.     In May 2021, Ahn received her third-year evaluation—passing with an eight (8) to two (2) vote, two (2) abstaining.

31.     In or around June 2021, Ahn met with Buisch to request a salary increase and early promotion. From 2019 to 2022, Ahn was the lowest paid faculty in the Art Department, despite her years of experience and skill.

32.     In the Summer of 2021, Ahn contacted Buisch, the then-Art Department Chair, to report Professor Miller's poor/discriminatory treatment.

33.    In or around August 2021, Buisch requested a meeting with Ahn's tenure committee, Miller, Meg Mitchell, and Smith, to discuss potentially switching committee members—despite Ahn not having made such request. The committee did not invite Ahn or solicit her input/opinion; Ahn was not allowed to attend the meeting.

34.    On or about September 1, 2021, Mitchell approached Ahn and stated "do you know that the Art professors voted 'no' to your third-year evaluation because they thought that Professor Miller would say 'no' to you?" Ahn was shocked and was sent into a panic attack by this unprovoked comment.

35.    Mitchell continued to harass Ahn, particularly regarding her accented English and South Korean cultural background, articulating that Ahn's English and intercultural communication skills discouraged and devalued her contributions to the Graphic Design program. Mitchell reported in Ahn's annual review that several students allegedly complained about her English, despite Ahn having not received any such complaints in her teaching evaluations.

36.    As a result of Mitchell's harassing and discriminatory treatment, Ahn began suffering debilitating bouts of anxiety. In September 2021, Ahn requested leave related to her anxiety and as a result of her discriminatory interactions with Mitchell.

37.    In 2022, Ahn received the 2022 Design Educators Award, a highly regarded international design society award from the Society of Experimental Graphic Design only awarded to a single graphic design educator annually.

38.    Following Miller's retirement in the Spring of 2022, Ahn took over most of his responsibilities including: managing two (2) Anderson Labs, hiring and advising new tenure-track professors and lecturers, developing graphic design courses, and operating the Anderson Fund—all without any credit as the Interim Graphic Design Program Chair.

39.    Despite taking on Miller's responsibilities, the Art Department specifically prohibited Ahn from using "Interim Chair" on her email signature, despite several of her colleagues agreeing that she was the current Graphic Design Program Chair. Ahn instead changed her email signature to reference her role as "Graphic Design Program Coordinator" to reflect her work stepping in to complete Miller's former responsibilities for the program and department, particularly with the program's expansion with three (3) newly hired faculty members, Lee and two (2) part-time faculty.

40.    In Summer 2022, Ahn requested a meeting with Dean Diana Hess to discuss her previous request for a salary increase and/or promotion, made in 2021. Dean Hess agreed with Ahn's request for a salary increase and informed her to speak with Buisch. Ahn reached out to Buisch numerous times, to no avail.

41.    In August 2022, Ahn spoke with Timothy McCarty, Department Administrator, regarding the agreed upon salary increase. McCarty stated, "it was on HR and the School."

42.    Ahn took a brief medical leave from September 8-13, 2022 regarding her panic and/or anxiety attacks.

7

43.    On or around September 29, 2022, Buisch reached out to Ahn to pressure her to open the Anderson Design Laboratory, specifically set aside for the Graphic Design Program, at 10:30 p.m. for general Art Department use. Buisch stated that "Art professors have deep growing concerns not to open the Anderson Labs to the Department." Ahn responded that the Anderson Design Lab was fully booked for the Program students, that there were not staff/teaching/technical assistants to oversee the computers during requested general department use, and reminded Buisch that there had been a theft the previous year of a computer from the lab.

44.    On information and belief, the Anderson Fund was founded by a former professor specifically to support graphic design—including computer equipment for the Anderson Design Laboratory, undergraduate scholarships, and a graduate design fellowship.

45.    Ahn met again with McCarty regarding her salary increase on September 30, 2022 and received correspondence reflecting the $5,000.00 salary increase the same day. However, the increase was not actually effective on Ahn's paychecks until October 22, 2022.

46.    In November 2022, Defendant eliminated Ahn from contention for a professional award. On information and belief, the Art Department instead favored a candidate that, on information and belief, was voted upon during the executive meeting led by Buisch.

47.     UW awarded Ahn a performance bonus on or around December 1, 2022. On information and belief, UW awarded Ahn the performance bonus in recognition of her faculty performance going "above and beyond expectations."

48.     On December 20, 2022, Ahn was featured in a UW online publication, "Student to Student: How Professors Are Stepping Up."

49.     On December 31, 2022, Ahn emailed Buisch and Smith, regarding her concerns with the Graphic Design Program and her heavy teaching load.

50.     In the Summer of 2022, Ahn shared with Buisch her health condition and disability status. During a Zoom call with Buisch, Ahn shared that as a result of her heart condition, her heart was operating at only about eighty percent (80%) of its total capacity, that she had surgery to receive a stent in her coronary artery in 2010, and suffered ongoing hardships due to her disabling health condition.

51.     On or around January 17, 2023, Ahn met with Buisch to discuss Ahn's concerns regarding Mitchell's treatment of her. Ahn and Buisch also discussed Ahn's Summer 2022 suggestion to develop an Interaction Design certificate program within the Department. Buisch stated that "the next department chair mentioned that you are not tenured yet and may not be suitable to develop an Interaction Design Certificate Program." However, on information and belief, other UW tenure-track professors, not belonging to Ahn's protected category(ies), in the Art Department have developed certificate programs; and Interaction Design is a growing area for market demand within the graphic design field.

52.     On or around January 20, 2023, Buisch emailed Ahn, chastising her for using "Graphic Design Program Coordinator" to describe her role, despite Ahn using the same in her email signature since the Fall of 2022 without issue.

53.     Also, in or around January 2023, Jim Escalante, Anderson Fund trustee and Art Professor, requested a meeting with Ahn, Lee, and newly hired faculty Julie Chen, Art Department. During the meeting, Ahn asked Escalante for clarification regarding how the Anderson Fund could be used for non-graphic design functions and expressed her concern that funds were being inappropriately used.

54.     On information and belief, following Ahn's voiced concerns to Esclante, Meg Sensenbrenner, liaison to the Anderson Fund, emailed Buisch requesting that Ahn cease all communications with Esclante.

55.     On January 24, 2023, Buisch emailed Ahn chastising her for asking for clarification regarding the Anderson Fund and reporting potential misappropriation of funds. Buisch additionally demanded Ahn cease all communications with Escalante and Sensenbrenner, and scheduled a meeting with Ahn, himself, and Human Resources to "set clear boundaries."

56.     Immediately following receipt of Buisch's January 24, 2023 email, Ahn's anxiety and panic attacks severely flared and she was diagnosed with anxiety on or around the next day.

57.     Ahn responded to Buisch's email on January 25, 2023, and stated her belief that his behavior was discriminatory towards her as an Asian woman.

58.    In January 2023, Ahn became concerned that a former student of hers had plagiarized her work and taken credit. She posted on her personal Facebook page about her frustration and dismay, as well as concern for herself and graphic design programs for this plagiarizing behavior from a former student.

59.    Shortly thereafter, Dean Hess and/or Adam Nelson, Chief Associate Dean, emailed Ahn to schedule a meeting in February 2023.

60.    On February 28, 2023, Defendant chastised Ahn for vocalizing her concerns on her personal social media pages as "inappropriate and unprofessional."

61.    However, Defendant took no further action to investigate Ahn's claim of plagiarism by the former student of her copyrighted work, nor did Defendant support Ahn in protecting her copyright and professional reputation.

62.    On or about January 27, 2023, Ahn shared her experiences of discrimination within the field of academia as a person from an underrepresented background and the systemic issues she has faced, on her personal social media, specifically recounting her time teaching at an institution that is not UW.

63.    Shortly thereafter, Buisch and Smith contacted Ahn, yelling and scolding her for her post made to her personal social media and "concerns regarding social media/outward facing messaging regarding Graphic [D]esign and the [A]rt [D]epartment[,]" and scheduled a meeting for February 21, 2023 at 2:00 p.m.

64.    On or around February 14, 2023, Ahn sent Beth Meyerand, Vice Provost of Faculty and Students, a letter detailing the harassment, discrimination, and retaliation she was experiencing in the workplace.

65.    On or around February 15, 2023, Ahn met with Smith to discuss her request for new interactive design curriculum and her development of the same. Smith denied her request, stating that as non-tenured faculty she was not entitled to create/develop curriculum. In response, Ahn shared that Smith's unresponsiveness to her prior concerns and communications made it difficult to develop a relationship of trust and she was dismayed at the isolation and discrimination she was experiencing within the Department.

66.    On or around February 23, 2023, Ahn made a formal complaint to Meyerand regarding the harassment, discrimination, and retaliation she was experiencing in the workplace.

67.    In response to Ahn's February 2023 reporting of harassment/discrimination/retaliation, Meyerand directed Ahn to the University of Wisconsin Office of Compliance.

68.    Ahn submitted a formal complaint to the Office of Compliance on or about March 1, 2023, alleging she was the target of harassment and discrimination on the basis of her sex, and specifically cited Miller, Mitchell, and Buisch's behavior/conduct. Ahn detailed how the harassment/discrimination caused her to suffer panic attacks and severe anxiety and exacerbated her pre-exiting cardiovascular disease/condition to such a degree that her treating medical provider stated the necessity of medical leave. Ahn's formal complaint requested a formal investigation and follow-up meeting to discuss her allegations.

69.     On or about March 6, 2023, Buisch emailed Ahn informing her that he would not be interested in providing information and would not provide any assistance with her formal complaint.

70.     On or around March 28, 2023, Defendant's Office of Compliance reached the conclusion that Ahn had failed to articulate a *prima facie* case of sex-based employment discrimination. However, on information and belief, Defendant did not conduct an internal investigation and Ahn was never interviewed as part of the process.

71.     As recommended by Nelson, Ahn communicated with the Office of Workforce Relations, specifically Toni Thellefsen, Compliance Manager, on March 28, 2023. Ahn shared with Thellefsen the discrimination and differential treatment she had suffered, and shared that she was the subject of intimidation and unwelcome harassment from UW and Buisch.

72.     On April 5, 2023, Thellefsen emailed Ahn, declining to further investigate Ahn's allegations of harassment, discrimination, and/or retaliation.

73.     In or around March/April 2023, Defendant, via the Art Department steering committee, completed Ahn's 2022 annual performance review, noting her Performance Annual Review ("PAR") rating as a four (4) out of five (5) for the 2022 performance year.

74. On or about April 10, 2023, Defendant via Buisch informed Ahn that she had twenty (20) <u>hours</u> to respond to a tenure track reappointment review from the oversight committee—instead of the policy requiring twenty (20) <u>day</u> notice of a reappointment review. Defendant further notified Ahn that her committee would convene and vote on her contract renewal on April 12, 2023. Buisch further stated that he would submit the review to the committee for a vote on renewal and/or progress toward annual contract, a part of tenure status; and that if her progress was deemed "inadequate," her employment would be non-renewed with no opportunity to obtain tenure status, and her employment would conclude at the end of the 2023-2024 academic year. On information and belief, Buisch asserted that if Ahn's committee voted not to renew her contract, that she would be provided the required "one year of notice" for her employment termination.

75. Ahn requested and was approved for sick leave from April 11–13, 2023; she went to urgent care on April 11, 2023 for panic/anxiety attacks.

76. Ahn then additionally requested and was approved for sick leave from April 14–24, 2023 related to her medical condition.

77. Following Buisch's April 10, 2023 correspondence, Ahn responded on or about the following day to Buisch and also included Meyer. Ahn requested an extension of time to respond regarding the reappointment review due to her medical leave status and unusually short turnaround time required by the committee of twenty (20) hours (instead of the policy required twenty (20) day time to respond). Ahn reminded Defendant that she received this alleged "notice" to provide a response

14

regarding her contract renewal while she was out related to her medical condition(s), and that she had already given Defendant notice of her disabling conditions that have been exacerbated by the harassment, discrimination, and retaliation experienced at the workplace. Ahn also asserted that the committee's decision to meet and vote on her reappointment/renewal without following the proper procedure was discriminatory and retaliatory.

78.    On or around April 12, 2023, Ahn emailed Defendant reporting the violations of her civil rights and the Department's discrimination based on her race, ethnicity, sex, and medical conditions.

79.    On or around April 13, 2023, Ahn's committee met to discuss her performance and vote on her reappointment/renewal, without providing her the requested extension to provide a response and/or attend the meeting. The committee voted in favor of non-renewal, with three (3) abstentions.

80.    Following the committee's April 13, 2023 vote to non-renew Ahn, Tammy Wacek, Human Resources Associate Director; Divisional Disability Representative ("DDR"), contacted Ahn, offering to help her with her request for medical leave. Ahn expressed confusion and explained that she submitted a doctor's note on or around April 11, 2023 related to her medical status and need for leave related to the same.

81.    On information and belief, Defendant stated in Ahn's short-term disability approval that her disability, as it pertained to her short-term disability claim, *began* on April 12, 2023.

82.    On or around April 14, 2023, Wacek emailed Ahn seeking clarification regarding her status. Ahn responded that she was unable to appear at the committee meeting due to her anxiety and panic attacks caused by the harassing and discriminatory treatment she suffered, including the lack of due process for notice of the committee's meeting regarding her renewal vote and opportunity to respond in her defense.

83.    On information and belief, the committee reconvened on or around April 16, 2023 to discuss and/or vote on Ahn's renewal.

84.    On or around April 18, 2023, Ahn received correspondence from Buisch informing her that the committee voted to non-renew her contract and that her employment would end at the end of the 2023–2024 academic year.

85.    In April 2023, Ahn requested and was granted medical leave related to her mental health, effective from April 26, 2023 to May 21, 2023.[1]

86.    On or about April 26, 2023, Ahn's health took a sharp downward turn. She was hospitalized for suicidal ideation.

87.    On or around April 28, 2023, Ahn and her Teaching Assistant, Tamara MacLean, emailed back and forth about instruction materials and final grades.

88.    Defendant did not assign or hire a replacement instructor (faculty- or staff-level) to take over Ahn's teaching duties while she was out on approved medical leave for her own serious and disabling health condition. Instead, Ahn's <u>Teaching</u>

---

[1] May 21, 2023 is the end of the contractual 2022-2023 academic year.

16

Assistant was left to assemble teaching plans/instructions and grading, with Ahn's continuing oversight.

89.     On information and belief, Defendant's Art Department has not provided a faculty or staff-level replacement instructor, in addition to the existing teaching assistant, to cover during a medical leave/absence.

90.     Due to the lack of a replacement instructor, Ahn was forced to continue overseeing her Teaching Assistant's work while she was out on approved medical leave.

91.     On or about May 3, 2023, Buisch emailed Ahn a "Notice of Reasons for Nonrenewal Decision."

92.     Ahn was confused, shocked, distressed, and humiliated by Defendant's alleged reasons for her non-renewal of employment—given her highly favorable performance assessments and recent recognition of her strong performance from UW.

93.     On or around May 22, 2023, Buisch emailed Ahn, informing her that the committee had voided its non-renewal decision. Buisch stated that allegedly he and the committee "became aware" of the vote's procedural deficiencies only after the decision was made. Buisch further informed Ahn that as a result, a new meeting and vote would be scheduled in or around the Fall semester of 2023.

94.     On or around May 24, 2023, Wacek emailed Ahn asking for her availability for Summer instruction from June 26, 2023 to July 23, 2023. Ahn replied that her medical condition required her to undergo rehabilitation and to get "critical rest," but that she did not anticipate additional hospitalization.

95.    On or around June 2, 2023, Wacek emailed Ahn stating that due to additional documentation regarding Ahn's medical needs, another person would teach the Summer courses instead of Ahn. Wacek also stated that Ahn's renewal committee meeting was scheduled in August 2023. Ahn expressed her surprise that she was not being allowed to teach Summer courses, as she was not on medical leave during the requested availability.

96.    On or about June 23, 2023, Ahn emailed Defendant to report that she would be undergoing a surgical procedure related to her heart condition on July 6, 2023. Ahn further shared that she believed the harassing and discriminatory treatment she suffered exacerbated and/or contributed to her escalating need for medical treatment for her heart condition.

97.    Ahn additionally submitted complaints to Defendant about discriminatory treatment/practices on or about June 26, 2023 and June 30, 2023.

98.    On or about August 6, 2023, Ahn submitted a new discrimination complaint to Defendant and also expressed her need to remain on medical leave during the Fall 2023 semester.

99.    On or about August 16, 2023, Ahn underwent open heart surgery.

100.    On or about August 23, 2023, while Ahn was on her second approved period of approved medical leave, McCarty emailed her stating that "[w]hile you are on your Leave of Absence, you will be on unpaid status by the end of September and will need to make arrangements for insurance intentions . . . Your options are to prepay, get billed, or cancel insurance."

101.  Ahn immediately responded to McCarty and copied Smith, Wacek, Meyerand, Nelson, and the Art Department Chair stating, "I already agreed with Tammy Wacek on August 1, 2023 that I will go to paid leave by the exhaustion . . . I had a major surgery with four vessels of my heart last Wednesday. I am required medically to rest[.]"

102.  On or about September 18, 2023, Ahn emailed Smith, then-Department Chair, requesting disability accommodations for the Spring 2024 semester, including a potential twenty (20) hour work week for the semester.

103.  On or around November 3, 2023, Ahn communicated with Wacek regarding her request for return to work accommodations and regarding a new leave request.

104.  Ahn was on unpaid medical leave from October 18, 2023 to November 6, 2023, which continued from November 7, 2023 to January 24, 2024.

105.  On or around December 1, 2024, Wacek emailed Ahn confirming that Ahn was not teaching during the Spring 2024 semester. Ahn underwent numerous heart tests between December 2023 and January 2024.

106.  Ahn continued on unpaid medical leave from January 13, 2024 to May 21, 2024.

107.  On or about February 7, 2024, Ahn filed a Charge of Discrimination with the EEOC.

108.  On or about February 10, 2024, Ahn underwent another heart procedure.

109.    On or about August 10, 2024, Defendant denied Ahn's request for continued medical leave for her serious and disabling medical condition.

110.    On or about November 22, 2024, Smith filed a Faculty Policies and Procedures complaint against Ahn.

111.    On or about December 11, 2024, Defendant voted to terminate Ahn's employment. Despite Ahn's previous request to send important notifications via physical mail not email, Defendant, via Smith, emailed Ahn to provide her twenty (20) days' notice in advance of the meeting regarding her non-renewal vote. Defendant did not provide the notice via physical mail.

112.    On January 13, 2025, Charles Lee Isbell, Jr., Provost and Vice Chancellor for Academic Affairs, notified Ahn that she was the subject of a formal complaint alleging her failure to "perform the fundamental responsibilities of UW-Madison faculty[.]"

113.    On or around February 28, 2025, Michael Bernard-Donals issued a Final Investigative Report.

114.    On July 28, 2025, Defendant issued its final determination regarding discipline, dismissing Ahn from Defendant's employment.

115.    On October 17, 2024, Defendant, via Wacek, sent Ahn a reasonable accommodation request denial, stating in part the decision was based on:

> [Y]our understanding that you were on permanent disability. That same medical documentation also indicates your request for "no further contact with the Art Department Professors until EEOC finalizes investigation," which will take an unknown amount of time, up to several years. Contact with your department is essential for performing the duties of your role, and it is unreasonable to approve leave and/or no contact during this investigation and/or until it is finalized.

(emphasis added).

116.    Wacek's assertion that Ahn is "on permanent disability" misrepresented Ahn's disability status. Ahn was able to work approximately one (1) to three (3) hours per day with accommodation during the time period in question. Further, Ahn's treating psychiatrist recommended no further contact between her and the Art Department until the EEOC finalized the investigation, on or by February 15, 2025 — not "an unknown amount of time."

### FIRST CAUSE OF ACTION:
### TITLE VII—RACIAL DISCRIMINATION/HARASSMENT

117.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

118.    Title VII makes it unlawful for employers to discriminate in the employment of an individual "with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individuals . . . race." 42 U.S.C. § 2000e-2(a)(1).

119.    Title VII prohibits all employers with fifteen (15) or more employees from engaging in racial discrimination. 42 U.S.C. §§ 2000e-2(a), 2000e(b).

120.   Defendant discriminated against Ahn because of her race, Asian-American, by non-renewing her contract and terminating her employment as a tenure-track Assistant Professor.

121.   Defendant discriminated against Ahn because of her race, Asian-American, by not providing Ahn with the policy-required twenty (20) days' notice prior to her committee meeting, and not allowing her to respond to the allegations against her.

122.   Defendant discriminated against Ahn because of her race, Asian-American, by ignoring Ahn's requests and delaying her performance-based raise from Summer 2021 to October 2022.

123.   Defendant discriminated against Ahn because of her race, Asian-American, by chastising Ahn for stepping in to assume the responsibilities of the Graphic Design Program Chair following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

124.   Defendant discriminated against Ahn because of her race, Asian-American, by scolding Ahn for referring to her assumed responsibilities as "Interim Chair" of the Graphic Design Program—following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

125.   Defendant discriminated against Ahn because of her race, Asian-American, by denying Ahn the ability to refer to herself as "Interim Chair" of the Graphic Design Program, nor acknowledging the responsibilities Ahn took on

following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

126.    Defendant discriminated against Ahn because of her race, Asian-American, by refusing Ahn's request to refer to herself as "Program Coordinator" of the Graphic Design Program following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair of the program or an individual to take on the chair's responsibilities.

127.    Defendant discriminated against Ahn because of her race, Asian-American, by pressuring Ahn to make the Anderson Design Laboratory available for general Department use, and against the purpose of the Anderson Fund.

128.    Defendant discriminated against Ahn because of her race, Asian-American, by harassing and chastising her because she opposed Department pressure to misappropriate and/or inappropriately use Anderson Fund resources.

129.    Defendant discriminated against Ahn because of her race, Asian-American, by harassing and chastising her because she opposed plagiarism and copyright infringement from a former, non-UW, student.

130.    Defendant discriminated against Ahn because of her race, Asian-American, by failing or refusing to investigate her complaints of harassment/discrimination by her colleagues, supervisor(s), committee members, and/or the Department.

131.    Defendant discriminated against Ahn because of her race, Asian-American, by subjecting her to worse treatment—via harassment, unequal scrutiny, scolding/chastising, lack of support/indifference—than her non-Asian/Asian-American colleagues.

132.    By engaging in the conduct described above, and in other ways, Defendant willfully discriminated against Ahn when it non-renewed her contract and terminated her employment.

133.    As a direct and proximate result of Defendant's discrimination, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

## SECOND CAUSE OF ACTION:
### TITLE VII— NATIONAL ORIGIN DISCRIMINATION/HARASSMENT

134.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

135.    Title VII makes it unlawful for employers to discriminate in the employment of an individual "with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individuals . . . national origin." 42 U.S.C. § 2000e-2(a)(1).

136.    Title VII prohibits all employers with fifteen (15) or more employees from engaging in national origin discrimination. 42 U.S.C. §§ 2000e-2(a), 2000e(b).

137.    Defendant discriminated against Ahn because of her national origin, South Korean, by non-renewing her contract and terminating her employment as a tenure-track Assistant Professor.

138.    Defendant discriminated against Ahn because of her national origin, South Korean, by not providing Ahn with the policy-required twenty (20) days' notice prior to her committee meeting, and not allowing her to respond to the allegations against her.

139.    Defendant discriminated against Ahn because of her national origin, South Korean, by ignoring Ahn's requests and delaying her performance-based raise from Summer 2021 to October 2022.

140.    Defendant discriminated against Ahn because of her national origin, South Korean, by chastising Ahn for stepping in to assume the responsibilities of the Graphic Design Program Chair following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

141.    Defendant discriminated against Ahn because of her national origin, South Korean, by yelling at and scolding Ahn for referring to her assumed responsibilities as "Interim Chair" of the Graphic Design Program—following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

142.    Defendant discriminated against Ahn because of her national origin, South Korean, by denying Ahn the ability to refer to herself as "Interim Chair" of the Graphic Design Program, nor acknowledging the responsibilities Ahn took on

following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

143.   Defendant discriminated against Ahn because of her national origin, South Korean, by refusing Ahn's request to refer to herself as "Program Coordinator" of the Graphic Design Program following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair of the program or an individual to take on the chair's responsibilities.

144.   Defendant discriminated against Ahn because of her national origin, South Korean, by pressuring Ahn to make the Anderson Design Laboratory available for general Department use, and against the purpose of the Anderson Fund.

145.   Defendant discriminated against Ahn because of her national origin, South Korean, by harassing and chastising her because she opposed Department pressure to misappropriate and/or inappropriately use Anderson Fund resources.

146.   Defendant discriminated against Ahn because of her national origin, South Korean, by harassing and chastising her because she opposed plagiarism and copyright infringement from a former, non-UW, student.

147.   Defendant discriminated against Ahn because of her national origin, South Korean, by failing or refusing to investigate her complaints of harassment/discrimination by her colleagues, supervisor(s), committee members, and/or the Department.

148. Defendant discriminated against Ahn because of her national origin, South Korean, by subjecting her to worse treatment—via harassment, unequal scrutiny, scolding/chastising, lack of support/indifference—than her non-South Korean colleagues.

149. By engaging in the conduct described above, and in other ways, Defendant willfully discriminated against Ahn when it non-renewed her contract and terminated her employment.

150. As a direct and proximate result of Defendant's discrimination, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

<u>THIRD CAUSE OF ACTION</u>:
<u>TITLE VII— SEX DISCRIMINATION/HARASSMENT</u>

151. Ahn re-alleges and incorporates herein by reference the above numbered paragraphs

152. Title VII makes it unlawful for employers to discriminate in the employment of an individual "with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individuals . . . sex." 42 U.S.C. § 2000e-2(a)(1).

153. Title VII prohibits all employers with fifteen (15) or more employees from engaging in sex discrimination. 42 U.S.C. §§ 2000e-2(a), 2000e(b).

154.    Defendant discriminated against Ahn because of her sex, female, by non-renewing her contract and terminating her employment as a tenure-track Assistant Professor.

155.    Defendant discriminated against Ahn because of her sex, female, by not providing Ahn with the policy-required twenty (20) days' notice prior to her committee meeting, and not allowing her to respond to the allegations against her.

156.    Defendant discriminated against Ahn because of her sex, female, by ignoring Ahn's requests and delaying her performance-based raise from Summer 2021 to October 2022.

157.    Defendant discriminated against Ahn because of her sex, female, by chastising Ahn for stepping in to assume the responsibilities of the Graphic Design Program Chair following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

158.    Defendant discriminated against Ahn because of her sex, female, by scolding Ahn for referring to her assumed responsibilities as "Interim Chair" of the Graphic Design Program—following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

159.    Defendant discriminated against Ahn because of her sex, female, by denying Ahn the ability to refer to herself as "Interim Chair" of the Graphic Design Program, nor acknowledging the responsibilities Ahn took on following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

160.    Defendant discriminated against Ahn because of her sex, female, by refusing Ahn's request to refer to herself as "Program Coordinator" of the Graphic Design Program following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair of the program or an individual to take on the chair's responsibilities.

161.    Defendant discriminated against Ahn because of her sex, female, by pressuring Ahn to make the Anderson Design Laboratory available for general Department use, and against the purpose of the Anderson Fund.

162.    Defendant discriminated against Ahn because of her sex, female, by harassing and chastising her because she opposed Department pressure to misappropriate and/or inappropriately use Anderson Fund resources.

163.    Defendant discriminated against Ahn because of her sex, female, by harassing and chastising her because she opposed plagiarism and copyright infringement from a former, non-UW, student.

164.    Defendant discriminated against Ahn because of her sex, female, by failing or refusing to investigate her complaints of harassment/discrimination by her colleagues, supervisor(s), committee members, and/or the Department.

165.    Defendant discriminated against Ahn because of her sex, female, by subjecting her to harassment, unequal scrutiny, scolding/chastising, lack of support/indifference.

166.    By engaging in the conduct described above, and in other ways, Defendant willfully discriminated against Ahn when it non-renewed her contract and terminated her employment.

167.    As a direct and proximate result of Defendant's discrimination, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

## FOURTH CAUSE OF ACTION: DISPARATE TREATMENT UNDER TITLE VII

168.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

169.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by non-renewing her contract and terminating her employment as a tenure-track Assistant Professor.

170.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues via harassment, unequal scrutiny, scolding/chastising, and lack of support/indifference.

171.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by not providing Ahn with the policy-required twenty (20) days' notice prior to her committee meeting, and not allowing her to respond to the allegations against her.

172.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by ignoring Ahn's requests and delaying her performance-based raise from Summer 2021 to October 2022.

173.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by chastising Ahn for stepping in to assume the responsibilities of the Graphic Design Program Chair following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

174.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by scolding Ahn for referring to her assumed responsibilities as "Interim Chair" of the Graphic Design Program—following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair. On information and belief, Defendant has not scolded Ahn's colleagues outside of her protected category(ies) for similar actions/behavior.

175.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by denying Ahn the ability to refer to herself as "Interim Chair" of the Graphic Design Program, nor acknowledging the responsibilities Ahn took on following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair.

176. On information and belief, Ahn's non-Asian/Asian-American, non-South Korean, and/or male non-tenured faculty colleagues have been titled "Interim Chair," despite Defendant's assertions that only tenured faculty can be "Interim Chair" of a program or department.

177. Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by refusing Ahn's request to refer to herself as "Program Coordinator" of the Graphic Design Program following Miller's retirement and the Department's failure to identify, assign, or hire a new Chair of the program or an individual to take on the chair's responsibilities.

178. On information and belief, Ahn's non-Asian/Asian-American, non-South Korean, and/or male non-tenured faculty colleagues have been titled "Program Coordinator," despite Defendant's assertions that only tenured faculty can be "Program Coordinator" of a program or department.

179. Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by pressuring Ahn to make the Anderson Design Laboratory available for general Department use, and against the purpose of the Anderson Fund.

180. Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by harassing and chastising her because she opposed Department pressure to misappropriate and/or inappropriately use Anderson Fund resources.

181.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by harassing and chastising her because she opposed plagiarism and copyright infringement from a former, non-UW, student. On information and belief, Defendant has been supportive of faculty alleging plagiarism and/or copyright infringement outside of Ahn's protected category(ies).

182.    Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues by failing or refusing to investigate her complaints of harassment/discrimination by her colleagues, supervisor(s), committee members, and/or the Department.

183.    In acting as described above, Defendant subjected Ahn to worse treatment than her non-Asian/Asian-American, non-South Korean, and/or male colleagues.

184.    As a direct and proximate result of Defendant's disparate treatment, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

185.    Defendant's conduct was undertaken with malice and in reckless disregard to the rights of Ahn under Title VII.

<u>**FIFTH CAUSE OF ACTION:**</u>
**TITLE VII RETALIATION—OPPOSITION**

186.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

187. Ahn engaged in protected activity by informing Buisch, Hess, Smith, Meyerand, Thellefsen, Wacek, as well as Defendant's Office of Compliance and Office of Workforce Relations, that she believed she was being targeted, harassed, discriminated against, and/or treated differently/worse based on her race/ethnicity, national origin, and/or sex.

188. Defendant then non-renewed her contract in retaliation for opposing discrimination in the workplace.

189. Defendant retaliated against Ahn because she opposed discrimination/harassment in the workplace.

190. Defendant retaliated against Ahn because she opposed Department pressure to misappropriate and/or inappropriately use Anderson Fund resources.

191. Defendant retaliated against Ahn because she opposed plagiarism and copyright infringement from a former, non-UW, student.

192. By engaging in the conduct described above, and in other ways, Defendant willfully retaliated against Ahn when it non-renewed her contract and terminated her employment.

193. As a direct and proximate result of Defendant's retaliation, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

<u>SIXTH CAUSE OF ACTION:</u>
REHABILITATION ACT—DISABILITY DISCRIMINATION/HARASSMENT

194.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

195.    Section 504 of the Rehabilitation Act prohibits discrimination based on disability by any federally funded program or activity. 29 U.S.C. § 794(a).

196.    Ahn was personally excluded, personally denied benefits, and personally discriminated against because of her known disability(ies).

197.    Defendant discriminated against Ahn because of her disability(ies) by refusing to accommodate her requests for accommodation, subjecting her to worse treatment than her non-disabled colleagues, harassing her before/during/after her medical leave, not providing her with the required twenty (20) days' notice before a committee vote regarding her contract renewal, non-renewing her contract, and terminating her employment.

198.    In acting as described above, Defendant knew about Ahn's disabilities and failed to consider, among other possibilities, providing a modified or a flexible schedule, assigning her a replacement instructor during her medical leave, and/or providing her additional time or an extension to respond before the renewal committee meeting and vote, as an accommodation while she sought treatment for her disability.

199.    In acting as described above, Defendant knew about Ahn's disabilities and failed to provide her requested accommodation(s), refusing to provide her adequate time to respond to allegations regarding her performance, and denying her

the ability to attend the renewal committee meeting(s), before electing to non-renew her contract and terminate her employment.

200.   Defendant failed to engage in the interactive process in any meaningful way to determine the precise limitations of Ahn's disabilities and what accommodation would allow her to perform the essential functions of her position.

201.   On October 17, 2024, Defendant, via Wacek, sent Ahn a reasonable accommodation request denial, stating in part the decision was based on:

> [Y]our understanding that you were on permanent disability. That same medical documentation also indicates your request for "no further contact with the Art Department Professors until EEOC finalizes investigation," which will take an unknown amount of time, up to several years. Contact with your department is essential for performing the duties of your role, and it is unreasonable to approve leave and/or no contact during this investigation and/or until it is finalized.

(emphasis added).

202.   Wacek's assertion that Ahn is "on permanent disability" misrepresented Ahn's disability status. Ahn was able to work approximately one (1) to three (3) hours per day with accommodation during the time period in question. Further, Ahn's treating psychiatrist recommended no further contact between her and the Art Department until the EEOC finalizes the investigation, on or by February 15, 2025 — not "an unknown amount of time."

203.   Smith emailed Ahn numerous times during her medical leave regarding the contract non-renewal/termination vote, despite Ahn's request to reschedule the meeting to allow her to recover from her open-heart surgery.

36

204.    Smith's harassing communications during Ahn's medical leave caused Ahn's health to flare, including multiple panic/anxiety attacks, post-traumatic stress disorder ("PTSD"), adjustment disorder, and severe depression.

205.    In these and other ways, Defendant failed to reasonably accommodate Ahn in violation of the Rehabilitation Act.

206.    As a direct and proximate result of Defendant's discrimination, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering, and humiliation, as well as other pecuniary and non-pecuniary losses.

## SEVENTH CAUSE OF ACTION:
## REHABILITATION ACT RETALIATION—OPPOSITION

207.    Ahn re-alleges and incorporates herein by reference the above numbered paragraphs.

208.    The Rehabilitation Act prohibits retaliation against "any individual because that individual has opposed any act or practice made unlawful . . . or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 45 CFR 84.71.

209.    Ahn engaged in protected activity by informing Buisch, Hess, Smith, Meyerand, Thellefsen, Wacek, as well as Defendant's Office of Compliance and Office of Workforce Relations, that she believed she was being targeted, harassed, discriminated against, and/or treated differently/worse based on her disability(ies) and/or need for accommodation.

210.    Defendant then non-renewed her contract in retaliation for opposing discrimination in the workplace.

211.    By engaging in the conduct described above, and in other ways, Defendant willfully retaliated against Ahn when it non-renewed her contract and terminated her employment.

212.    As a direct and proximate result of Defendant's retaliation, Ahn has suffered and continues to suffer economic damages, including lost wages, such as back pay and lost future earnings, and compensatory damages, such as emotional distress, stress, pain, suffering and humiliation, as well as other pecuniary and non-pecuniary losses.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against Defendant, ordering:

A.    Award of back pay equal to the pay that she would have received absent the discriminatory conduct pursuant to 42 U.S.C. §§ 12117, 200e-5(g) and interest on the back pay awarded;

B.    Reinstatement or, alternatively, front pay in an amount sufficient to make Ahn whole pursuant to 42 U.S.C. §§ 12117, 200e-5(g);

C.    Award compensatory damages for Ahn's emotional distress, pain, suffering, mental anguish, and other non-pecuniary losses pursuant to and subject to the limitations in 42 U.S.C. § 1981(a);

D.     Award Ahn her reasonable attorneys' fees, including litigation expenses

and costs, pursuant to 42 U.S.C. § 12205; and

E.     Award other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury.

Dated this 29th day of October, 2025.

**HAWKS QUINDEL, S.C.**
*Attorneys for Plaintiff, Yeohyun D. Ahn*


By:   */s Emma E. Knatterud-Johnson*
Emma E. Knatterud-Johnson, State Bar No.: 1122636
Email: eknatterud-johnson@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236